UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 23-cr-152 (SRN/TNL) |
| Plaintiff, | |
| v. | REPORT & RECOMMENDATION |
| Jordan Kenneth Edwards, | |
| Defendant. | |

Esther Soria Mignanelli, Assistant United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415; and Ben Tonkin, Trial Attorney, U.S. Department of Justice, 1301 New York Avenue Northwest, Washington, DC 20005 (for the Government); and

James M. Ventura, 1000 Twelve Oaks Center Drive, Suite 100, Wayzata, MN 55391 (for Defendant).

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant Jordan Kenneth Edwards' Motion to Suppress Evidence Obtained as a Result of Search and Seizure, ECF No. 34, and Amended Motion to Suppress Evidence Obtained as a Result of Search and Seizure, ECF No. 41. These motions have been referred to the undersigned for a report and recommendation to the district court, the Honorable Susan Richard Nelson, District Judge of the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

1

## II. BACKGROUND

A hearing was held on August 18, 2023. ECF No. 39. Esther Soria Mignanelli appeared on behalf of the United States of America (the "Government") and James M. Ventura appeared on behalf of Defendant.

Defendant's initial motion to suppress challenged the search of the upstairs unit of a residence in Minneapolis, Minnesota. At the hearing, Defendant stated the unit in question was his father's residence and he merely visits the residence. Defendant himself acknowledged that he may not have standing to challenge the search of the Minneapolis residence. The parties agreed that the challenge to the search of the Minneapolis residence was limited to a four-corners review of the warrant. The Government offered, and the Court received, Government Exhibit 1, the application, search warrant, and receipt, inventory, and return for the Minneapolis residence ("Residence Warrant").

Also at the hearing, Defendant stated for the first time that he was challenging a warrant used to obtain DNA evidence. There was some ambiguity as to whether Defendant was challenging the warrant used to obtain his DNA or a warrant used to obtain the DNA of someone else. The Court gave the parties some time to sort out the particular challenge; file an amended motion to suppress; and brief the issues. Subsequent to the hearing, Defendant filed an amended motion to suppress, in which he challenged both the Residence Warrant and a warrant used to obtain *his* DNA. Attached as Defense Exhibit A to the amended motion was the application, search warrant, and receipt, inventory, and return to obtain a sample of Defendant's DNA ("DNA Warrant"). *See generally* ECF No. 41-1.

Post-hearing briefing is now complete, and these motions are ripe for a determination by the Court.

### III. ANALYSIS

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *United States v. Flores-Lagonas*, 993 F.3d 550, 559 (8th Cir. 2021) (quoting U.S. Const. amend. IV). "[E]vidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *Id.* (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)).

**A. Residence Warrant**

"It is well-established that 'Fourth Amendment rights are personal rights that may not be asserted vicariously.'" *United States v. Anguiano*, 795 F.3d 873, 878 (8th Cir. 2015) (quoting *United States v. Barragan*, 379 F.3d 524, 529 (8th Cir. 2004)); *see, e.g.*, *United States v. Davis*, 943 F.3d 1129, 1132 (8th Cir. 2019) ("Only those with a reasonable expectation of privacy in the place searched may bring a Fourth Amendment challenge."); *see also Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." (quotation omitted)). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134. "[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he *personally*

has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (emphasis added).

"Consistent with the scope of the Fourth Amendment's protection, a defendant may challenge an unconstitutional search only if the defendant had a 'reasonable expectation of privacy' in the places searched or things seized." *United States v. Juneau*, 73 F.4th 607, 613 (8th Cir. 2023) (quoting *Katz v. United States*, 389 U.S. 347, 360-61 (1967) (Harlan, J., concurring)); *see also, e.g.*, *United States v. Sierra-Serrano*, 11 F.4th 931, 933 (8th Cir. 2021); *United States v. Russell*, 847 F.3d 616, 618 (8th Cir. 2017); *Barragan*, 379 F.3d at 529. "The concept of Fourth Amendment standing is a 'useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search.'" *Juneau*, 73 F.4th at 613 (quoting *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018)); *see also United States v. Bettis*, 946 F.3d 1024, 1027 (8th Cir. 2020).

As such, the burden is on the defendant moving to suppress to "prov[e] he had a legitimate expectation of privacy that was violated by the challenged search." *Russell*, 847 F.3d at 618 (quotation omitted); *see, e.g.*, *Sierra-Serrano*, 11 F.4th at 933; *United States v. Mosley*, 878 F.3d 246, 255 (8th Cir. 2017). "There is no 'single metric or exhaustive list of considerations,' but a defendant's expectation of privacy must be grounded in property law or understandings that are recognized by society." *Bettis*, 946 F.3d at 1027 (quoting *Byrd*, 138 S. Ct. at 1527); *accord Juneau*, 73 F.4th at 613. "A defendant who "fails to prove a sufficiently close connection to the relevant places or objects searched has no standing to claim that they were searched illegally." *Anguiano*,

4

795 F.3d at 878 (quotation omitted); *see, e.g.*, *Russell*, 847 F.3d at 618; *Barragan*, 379 F.3d at 530.

"The defendant bears this burden by a preponderance of the evidence." *Bettis*, 946 F.3d at 1027. In doing so, "[t]he defendant may not rely on positions the government has taken in the case but must present evidence of his standing, or at least point to specific evidence in the record which the government presented that established his standing." *United States v. Maxwell*, 778 F.3d 719, 732 (8th Cir. 2015); *see also, e.g.*, *United States v. Vue*, No. 19-cr-215(2) (DSD/ECW), 2020 WL 5821989, at *7 (D. Minn. Apr. 27, 2020), *report and recommendation adopted*, 2020 WL 3567830 (D. Minn. July 1, 2020).

As noted above, at the hearing, Defendant himself conceded that he may not have the requisite expectation of privacy in the Minneapolis residence. Defendant stated that it was his father's residence that he merely visits. In the amended motion, Defendant reiterates that the residence in question "was leased by [his] father." Def. Am. Mot. at 2. Moreover, as argued in connection with the DNA Warrant, *see infra* Section III.B.3, Defendant points out that (1) there were three prescription bottles "on top of the dresser containing the gun and suspected drugs" that were prescribed for someone other than Defendant; (2) the few pieces of his mail belonging to him that were recovered from a drawer in the dresser were "all addressed to him at another residence"; and (3) there were "[n]o other belongings" of his "to support the claim that he resided there." Def. Am. Mot. at 2-3.

The Supreme Court has held that "status as an overnight guest is alone enough to show that [a defendant] had an expectation of privacy in the home that society is prepared

5

to recognize as reasonable." *Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990); *see also, e.g.*, *United States v. Rogers*, 661 F.3d 991, 994 (8th Cir. 2011); *United States v. Wiest*, 596 F.3d 906, 909 (8th Cir. 2010). But, Defendant has not claimed that he was an overnight guest at the Minneapolis residence at the time of the search.

Defendant has not claimed he was using the bedroom in the Minneapolis residence where the items were found, nor has he claimed "that he had exclusive access to or had taken precautions to maintain privacy in the [residence]," "the room where the [items] were found," or the dresser itself. *United States v. Davis*, 361 F. App'x 704, 705 (8th Cir. 2010). And aside from the few pieces of his mail addressed to him *at another address*, Defendant has not claimed "that he stored personal effects [at the Minneapolis residence] which he admitted to owning." *Id.* In fact, he asserts that there were no other belongings of his at the residence. Moreover, even Defendant appears to concede that he did not "live[] or stay[] more than irregularly at his [father's] residence." *Id.*

Accordingly, the Court concludes that Defendant has not met his burden to show a sufficiently close connection to the Minneapolis residence such that he had a reasonable expectation of privacy in the residence. Without a reasonable expectation of privacy, Defendant lacks standing to challenge the search of the Minneapolis residence. *See Davis*, 361 F. App'x at 705-06; *Vue*, 2020 WL 821989, at *7-8. The Court therefore recommends that his motions be denied as to the Residence Warrant.

### B. DNA Warrant

Defendant's arguments regarding the DNA Warrant are derived from facts forming the basis for the Residence Warrant. In brief, Defendant argues that the

6

application in support of the DNA Warrant "appears to be deliberately misleading and factually inaccurate" when compared to the application in support of the Residence Warrant. Def. Am. Mot. at 1; *see also* Def. Add'l Argument at 1, ECF No. 43.

### 1. Application in Support of the Residence Warrant

The Residence Warrant was obtained in connection with the investigation of weapons and narcotics offenses involving an individual named Roosevelt Fields. Gov't Ex. 1 at App. pg. 2-6. The application details how a confidential informant observed a person they knew as "Renegade" "in possession of a black semi-automatic handgun and several ounces of crack cocaine." Gov't Ex. 1 at App. pg. 2-6; *see also* Gov't Ex. 1 at App. pg. 2-6 (confidential informant reporting "Renegade had the gun sitting on his lap and the crack cocaine was packaged in plastic bags in his car"). The confidential informant reported that "Renegade sell[s] large amounts of crack cocaine in the Minneapolis area and that Renegade carries a gun with him to protect himself from being robbed of his drugs and or drug money." Gov't Ex. 1 at App. pg. 2-6. The confidential informant provided a physical description of Renegade, his phone number, and a description of the vehicle Renegade was driving. Gov't Ex. 1 at App. pg. 2-6.

Law enforcement investigated. Among other things, law enforcement was able to identify Renegade as Fields, which the confidential informant confirmed. Law enforcement also determined by checking Fields' criminal history that he was ineligible to possess a firearm. Through a search warrant obtained for Fields' cell phone and the resulting data, law enforcement was able to determine Fields was living in Burnsville, Minnesota. Law enforcement conducted surveillance of the Burnsville residence and

observed the vehicle described by the confidential informant at the Burnsville residence.

Law enforcement obtained a tracking warrant for the vehicle and conducted both visual and electronic surveillance. Law enforcement observed Fields leave the Burnsville residence "and meet up with suspected drug customers and conduct suspected drug transactions." Gov't Ex. 1 at App. pg. 3-6. Law enforcement observed "Fields meet up with the same suspected drug customer on multiple occasions." Gov't Ex. 1 at App. pg. 3-6.

As is relevant here, on December 2, 2022, law enforcement observed Fields go to and enter the Minneapolis residence. Over the course of an hour, law enforcement observed Fields exit the Minneapolis residence "on two different occasions and conduct suspected drug transactions." Gov't Ex. 1 at App. pg. 4-6. A few days later, on December 5, law enforcement observed Fields again "meet up with suspected drug customers" at the Minneapolis residence. Gov't Ex. 1 at App. pg. 4-6.

In applying for a warrant to search the Minneapolis residence, law enforcement stated that the Minneapolis residence was part of "an up/down duplex" and Fields had had been observed walking upstairs to the upper unit through the glass front door. Gov't Ex. 1 at App. pg. 4-6. Law enforcement stated that, based on physical and electronic surveillance, Fields had been to the Minneapolis residence "almost every[]day and sometimes twice a day" over "approximately the past seven days." Gov't Ex. 1 at App. pg. 4-6. Law enforcement further stated that it was aware "from prior investigations that some people involved in selling illegal narcotics use stash houses to store their narcotics" as "[t]he stash houses make it harder for law enforcement to find the narcotics and it

limits the risk for the people selling narcotics[] because the suspect has limited ties to the stash house." Gov't Ex. 1 at App. pg. 4-6.

A search warrant was obtained for the Minneapolis residence for evidence related to narcotics and firearms offenses. *See generally* Gov't Ex. 1 at Search Warrant pgs. 1-3 to 3-3. During the search, mail in Defendant's name was found in a bedroom along with a handgun and crack cocaine. *See generally* Gov't Ex. 1 at Receipt, Inventory & Return. There appears to be no dispute that these items were all found in the same drawer of a dresser in a bedroom. *See* Gov't Consol. Resp. at 1-2, ECF No. 37; Def. Am. Mot. at 2; Second Gov't Consol. Resp. at 1-2, ECF No. 42; *see also* Def. Ex. A at App. pg. 2-3.

### 2. Application in Support of the DNA Warrant

The application in support of the DNA Warrant described the search of the Minneapolis residence "as part of an ongoing weapons and narcotics investigation," stating that "15 grams of crack cocaine inside a plastic bag and a Smith and Wesson 9mm semi-automatic handgun [had been found] in a dresser drawer, inside a bedroom" along with "men's socks and mailings in the name of Jordan Edwards." Def. Ex. A at App. pg. 2-3. Law enforcement also noted that, during the course of their investigation, Defendant had been observed coming and going from the Minneapolis residence "multiple times." Def. Ex. A at App. pg. 2-3. Law enforcement further noted that Defendant was not present when the Minneapolis residence was searched. Law enforcement sought a DNA sample from Defendant "to compare to a sample to be obtained by the Minneapolis Police Crime lab from the recovered firearm and plastic bag that contained the crack cocaine." Def. Ex. A at App. pg. 2-3.

### 3. Probable Cause

The Fourth Amendment mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation."  U.S. Const. amend IV; *see, e.g.*, *United States v. Mayweather*, 993 F.3d 1035, 1040 (8th Cir. 2021) ("The Fourth Amendment requires that warrants to search be supported by probable cause.").  "A supporting affidavit establishes probable cause to issue a search warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched."  *United States v. Brackett*, 846 F.3d 987, 992 (8th Cir. 2017) (quotation omitted); *see United States v. Skarda*, 845 F.3d 370, 376 (8th Cir. 2016) ("A showing of probable cause requires evidence of a nexus between the contraband and the place to be searched." (quotation omitted)); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983).

"The court must make a 'common-sense decision' based on the totality of the circumstances set forth in the affidavit as to whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  *Skarda*, 845 F.3d at 376 (quoting *Gates*, 462 U.S. at 238); *see United States v. Davis*, 867 F.3d 1021, 1027 (8th Cir. 2017) ("The determination of whether or not probable cause exists to issue a search warrant is to be based upon a common-sense reading of the entire affidavit." (quotation omitted)).  "Not only may an issuing judge 'draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant, . . . [the Eighth Circuit has] also recognized that law enforcement officers may make reasonable inferences in preparing affidavits in support of a warrant.'"  *Brackett*,

10

846 F.3d at 992 (quoting *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000)); *accord United States v. Augard*, 954 F.3d 1090, 1094 (8th Cir. 2020). "Factors to consider in determining whether a warrant application sufficiently links the items to be seized with the place to be searched include 'the nature of the crime and the reasonable, logical likelihood of finding useful evidence.'" *United States v. Roberts*, 975 F.3d 709, 713 (8th Cir. 2020) (quoting *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2017)).

"When an issuing court relies solely on an affidavit to determine whether probable cause exists, th[e reviewing] court only looks to the information found within the four corners of the affidavit." *United States v. Evans*, 4 F.4th 633, 636 (8th Cir. 2021) (quotation omitted). "Because reasonable minds may differ on whether a particular search-warrant affidavit establishes probable cause, the issuing court's determination is accorded great deference." *United States v. Willis*, No. 11-cr-13 (DSD/JJK), 2011 WL 1100127, at *2 (D. Minn. Mar. 14, 2011), *report and recommendation adopted*, 2011 WL 1060981 (D. Minn. Mar. 23, 2011); *see also, e.g.*, *Evans*, 4 F.4th at 636; *Mayweather*, 993 F.3d at 1041; *United States v. Daigle*, 947 F.3d 1076, 1081 (8th Cir. 2020); *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016).

Defendant argues that the application in support of the DNA Warrant "is silent as to all of the intelligence previously gathered and sworn to [regarding Fields], and instead attempts to attribute the handgun and suspected crack cocaine as belonging to [him]." Def. Am. Mot. at 2. Defendant further argues that the application omitted relevant facts, namely, that (1) the Minneapolis residence was leased by his father, "who clearly resided

at that address"; (2) prescription bottles in someone else's name were located on top of the dresser in which the items were found; and (3) the mail bearing his name was "addressed to him at another residence." Def. Am. Mot. at 2.

Defendant's argument that the application in support of the DNA Warrant "appears to be deliberately misleading and factually inaccurate," is reminiscent of relief sought pursuant to *Franks v. Delaware*, 438 U.S. 154 (1974), though Defendant has not moved for such a hearing. Def. Am. Mot. at 1; *see also* Def. Add'l Argument at 1, ECF No. 43. Under *Franks*,

> [a] defendant is entitled to a hearing to determine the veracity of a search warrant affidavit if he or she can make a substantial preliminary showing that a false statement was included in the affidavit (or that relevant information was omitted from it) intentionally or recklessly, and that the allegedly false statement was necessary to a finding of probable cause or that the alleged omission would have made it impossible to find probable cause.

*United States v. Mathison*, 157 F.3d 541, 547-48 (8th Cir. 1998) (citing 438 U.S. at 155-56); *see also, e.g.*, *United States v. Patterson*, 68 F.4th 402, 414 (8th Cir. 2023). "[A] misstatement must be the product 'of deliberate falsehood or of reckless disregard for the truth. . . . Allegations of negligence or innocent mistake are insufficient.'" *United States v. Williams*, 477 F.3d 554, 559 (8th Cir. 2007) (alteration in original) (quoting *Franks*, 438 U.S. at 171). "[R]ecklessness may be inferred from the fact of omission of information from an affidavit when the material omitted would have been 'clearly critical' to the finding of probable cause." *Id.* (quotation omitted); *see also, e.g.*, *United States v. McIntyre*, 646 F.3d 1107, 1114 (8th Cir. 2011). "In determining if an affiant's

12

statements were made with reckless disregard for the truth, the test is whether, after viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *McIntyre*, 646 F.3d at 1114 (quotation omitted); *see also, e.g.*, *United States v. Hansen*, 27 F.4th 634, 638 (8th Cir. 2022).

"The requirement of a substantial preliminary showing is not lightly met." *Mathison*, 157 F.3d at 548 (quotation omitted); *see also, e.g.*, *United States v. Randle*, 39 F.4th 533, 537 (8th Cir. 2022). "A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing." *Mathison*, 157 F.3d at 548; *see also Franks*, 438 U.S. at 171.

Further still, a defendant must show "that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *United States v. Gladney*, 48 F.3d 309, 313 (8th Cir. 1995) (quotation omitted); *see also United States v. Miller*, 11 F.4th 944, 953-54 (8th Cir. 2021) ("The proper course is to consider the affidavit as if the omission had been included . . . ."); *Hunter v. Namanny*, 219 F.3d 825, 830 (8th Cir. 2000) ("[A] reconstructed affidavit must also include material allegedly omitted with reckless disregard for the truth.").

Here, the application in support of the DNA Warrant sets forth a sufficient nexus between Defendant, the Minneapolis residence, and the items found in the dresser drawer. Defendant was observed by law enforcement to be coming and going from the Minneapolis residence multiple times and mail in his name was found in the dresser

13

drawer along with the items recovered by law enforcement. While the question of whether there was sufficient probable cause to obtain Defendant's DNA in connection with the handgun alone, separate and apart from the narcotics, might be a closer question,[1] the Court concludes that, under the totality of the circumstances, the application in support of the DNA Warrant established a fair probability that evidence of criminal activity—at minimum, unlawful possession of narcotics—would be found, and therefore established probable cause for the issuance of the search warrant.

Nor would a reconstructed application to include the information related to the Fields' investigation, the status of Defendant's father as the occupying tenant of the Minneapolis residence, the existence of prescription bottles belonging to someone else, and the address on Defendant's mail render the application in support of the DNA Warrant unsupported by probable cause. *See Miller*, 11 F.4th at 953-54; *Gladney*, 48 F.3d at 313. The close proximity of the items found to mail belonging to Defendant, regardless of the address listed, combined with the fact that law enforcement had observed Defendant coming and going from the Minneapolis residence multiple times provided a sufficient nexus between Defendant, the Minneapolis residence, and the items in the dresser drawer such that there was a fair probability that the DNA sought was evidence related to criminal activity. This is true notwithstanding that law enforcement

---

[1] The Government argues that "a fair probability existed that evidence of illegal gun possession would be found on [Defendant's] person in the form of [his] DNA." Second Gov't Consol. Resp. at 7. There are no facts in the application supporting the DNA Warrant that would suggest that Defendant was ineligible to possess a firearm. For example, in the application supporting the Residence Warrant, law enforcement stated that a check of Fields' criminal history was performed and Fields had a conviction rendering him ineligible to possess a firearm. Gov't Ex. 1 at App. pg. 2-6. No similar sort of information concerning Defendant was included in the application for the DNA Warrant.

was alerted to the handgun and narcotics through an investigation into another individual in connection with the Minneapolis residence; that the Minneapolis residence was leased to Defendant's father, who resided there; or that prescription bottles belonging to another person were found on top of the dresser. Probable cause "does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *Miller*, 11 F.4th at 953 (quotation omitted).

Defendant similarly contends that discovery has shown that "no laboratory testing or analysis was sought or conducted on the bag containing the suspected narcotics or the contents seized" and it appears no efforts were made to obtain Fields' DNA for comparison, thus making the affidavit in support of the DNA Warrant "highly suspect." Def. Add'l Argument at 1. But, as the Government points out, whether and to what extent law enforcement continued the Fields' investigation has no bearing on the existence of probable cause to obtain Defendant's DNA at the time of application.

Because the DNA Warrant was supported by probable cause,[2] the Court likewise recommends that Defendant's motions be denied with respect to the DNA Warrant.

[Continued on next page.]

---

[2] Having concluded that the DNA Warrant was supported by probable cause, the Court declines to address the parties' arguments as to the application of the good-faith exception under *United States v. Leon*, 468 U.S. 897 (1984).

## IV. RECOMMENDATION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, ECF No. 34, and Amended Motion to Suppress Evidence Obtained as a Result of Search and Seizure, ECF No. 41, be **DENIED**.

Date: October __27__, 2023

        *s/ Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*United States v. Edwards*
Case No. 23-cr-152 (SRN/TNL)

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.